# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL REED, O/B/O, )
TAMMY ANN REED, deceased, )
 )
         **Plaintiff,** )
 )
         v. )   Case No. CIV-17-476-JHP-SPS
 )
**COMMISSIONER of the Social** )
**Security Administration,** )
 )
         **Defendant.** )

## REPORT AND RECOMMENDATION

The claimant Michael Reed, o/b/o Tammy Ann Reed, deceased, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that the claimant was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 149). She completed two years of college, and had worked as a production clerk, billing clerk, administrative clerk, accounting clerk, secretary, and lawn mower (Tr. 27, 172, 229). The claimant alleged that she had been unable to work since an alleged onset date of March 20, 2014, due to residual effects from her July 2012 stroke, weakness and numbness on the left side, diabetes, hip pain, hand problems, and fibromyalgia (Tr. 17, 171-172).

### Procedural History

On June 18, 2014 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 27, 2016 (Tr. 15-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday,

and stand/walk for one hour each in an eight-hour workday, such that she could sit for two hours at one time, stand for one hour at one time, and walk for one hour at one time. He further found that she could frequently use the bilateral upper extremities for reaching in all directions (excluding overhead), handling, fingering, and feeling; occasionally use her bilateral upper extremities for reaching overhead and pushing/pulling; frequently use the bilateral lower extremities for operating foot controls; occasionally climb ramps/stairs, balance, stoop kneel, crouch, crawl; should avoid climbing ladders/ropes/scaffolds and stooping, kneeling, crouching, and crawling. Additionally, he found the claimant could not tolerate any exposure to unprotected heights, extreme heat, or vibrations; but she *could* tolerate occasional exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, and dust, odors, fumes, and pulmonary irritants. Finally, he stated that she could tolerate moderate office noise (Tr. 20). The ALJ then concluded that the claimant could return to her past work as an accounting clerk (Tr. 27).

### Review

The Plaintiff alleges that the ALJ erred by finding the claimant could perform the manipulative demands, including prolonged fingering, of her past relevant work. As part of this argument, he asserts that the ALJ failed to properly evaluate a treating physician opinion, and other opinion evidence in the record. The undersigned Magistrate Judge agrees with this contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of fibromyalgia, status post very mild stroke, obesity, and diabetes mellitus, as well as the nonsevere impairment of depression (Tr. 17). Relevant medical records from West Washington

-4-

County Clinic in Lincoln, Arkansas reflect that in July 2012 the claimant experienced an acute right thalamic infarct, *i. e.*, a stroke (Tr. 239). Following the stroke, she had musculoskeletal symptoms, fibromyalgia, and body pain, including persistent hand pain (Tr. 254-255, 263, 266). The hand pain was described as progressing up the elbows bilaterally and causing deep pain (Tr. 263). On August 15, 2013, the hand pain was assessed as significant, disabling, and interfering with all daily functions, even holding a steering wheel for a short time (Tr. 267, 271). She had previously had mild carpal tunnel before the stroke, and the stroke seemed to have exacerbated the pain (Tr. 267). On February 9, 2015, treatment notes reiterate that the claimant's hands were still so stiff it caused her pain to drive (Tr. 329). The claimant also reported foot pain several times (Tr. 360, 364), and one note reflected she reported them throbbing after being on her feet all day (Tr. 360). Treatment notes were all signed by Dr. Susan Portis Ferguson, M.D.

On October 10, 2014, Dr. Wojciech Dulowski, M.D. conducted a history and physical examination of the claimant (Tr. 316). He noted that she walked with a slight antalgic gait to the left side, but with good safety and stability and no assistive devices (Tr. 316). Additionally, he found she had 5/5 grip strength bilaterally, along with good gross and fine manipulation (Tr. 316). He assessed her with history of ischemic CVA, history of diabetes (insulin dependent), history of morbid obesity, hypertension, hyperlipidemia, and chronic pain syndrome (Tr. 317).

On January 6, 2014, Dr. Ferguson completed a physical Medical Source Statement ("MSS") regarding the claimant's ability to work. She indicated that the claimant could lift/carry less than ten pounds frequently, stand/walk and sit each less than thirty minutes

at a time for less than two hours in an eight-hour workday (Tr. 350). She indicated that the claimant could not work on a continuing and sustained basis because she required frequent changes in position due to significant stiffness, and that she still had residual problems from her stroke (Tr. 351). Additionally, she stated that the claimant had musculoskeletal pain, both joint and muscle, that had not improved with medications or with a rheumatologist evaluation, and that she had subsequently developed depression as well. Further, she stated that the claimant could not perform prolonged activity due to extremity pain, and that she would be absent from work three times or more per month (Tr. 351). This form did not have a separate section dedicated to a discussion of manipulative limitations.

On April 14, 2016, Dr. Ferguson wrote a letter stating that she had known the claimant for over a decade, that the claimant had been unable to work in an office setting since her stroke in 2012, and that the claimant's persistent post-stroke pain had worsened recently despite medication (Tr. 352). She noted the claimant had depression, fibromyalgia, and impairment of sensation and severe pain in her arms, hands, and legs. She believed the claimant had autoimmune connective tissue disorders, and noted the rheumatologist agreed with a diagnosis of post-stroke pain (Tr. 352). Finally, she stated that the claimant had "significant post-stroke brain and extremity impairment" and was not malingering (Tr. 352). She also completed another MSS, in which she reiterated the claimant's lift/carry and sit/stand/walk limitations, and further indicated that the claimant had manipulative limitations such that she could only occasionally perform both left- and right-hand functions of reaching, handling, fingering, and feeling (Tr. 357). She again

-6-

indicated that the claimant could not work on a continuing and sustained basis, and that she would be absent from work three or more times per month due to pain and inability to function (Tr. 358).

State reviewing physician David Coffman, M.D., determined that the claimant could perform light work, but that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, and never climb ladders/ropes/scaffolds (Tr. 65). He did not find any manipulative limitations but found that she should avoid all hazards (Tr. 65-66). Sharon Keith, M.D., affirmed these findings on reconsideration (Tr. 76-79).

At the administrative hearing, the vocational expert ("VE") testified that, among other limitations, if the claimant were limited to occasional handling and fingering, sedentary work would be eliminated (Tr. 55-56).

Following the administrative hearing, the ALJ sent out a medical interrogatory regarding physical impairments to Dr. Ronald Devere. He reviewed the record and then completed a Medical Source Statement ("MSS") regarding the claimant's physical ability to do work on August 18, 2016. In it, he indicated that the claimant could lift/carry up to twenty pounds occasionally and ten pounds frequently, sit for two hours at one time, up to six hours in and eight-hour workday, stand one hour at a time up to three hours in an eight-hour workday, and walk one hour at a time up to two hours in an eight-hour workday (Tr. 410-411). In support of these findings, he referred to the claimant's mild unsteady gait and slight leg and upper limb weakness (Tr. 411). He further indicated, *inter alia*, that the claimant could frequently reach, handle, finger, and feel, but only occasionally reach overhead and push/pull (Tr. 412).

The ALJ then sent a "Vocational Interrogatory" to vocational expert Lisa Cox, who completed it on October 6, 2016 (Tr. 229-233). Ms. Cox identified the claimant's past relevant work as an administrative clerk, accounting clerk, and lawn mower (Tr. 229). The ALJ propounded a hypothetical matching the ultimate RFC assigned in this case, and the VE indicated that she could perform past relevant work as an accounting clerk (Tr. 230-231).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the evidence contained in the medical record (Tr. 17-22). As to Dr. Ferguson's medical records, the ALJ summarized several treatment records, repeatedly noting that the claimant owned pigs, dogs, rabbits, goats, horses, chickens, and a huge garden, but not mentioning the treatment notes related to pain and musculoskeletal impairments, except for a February 9, 2015 treatment note that the claimant's hands were still stiff (Tr. 22-23). The ALJ noted Dr. Ferguson's opinions, but afforded them no weight, stating that her opinions were not consistent with the treatment notes. As to the claimant's physical impairments, the ALJ stated that Dr. Ferguson's "extreme limitations" were not supported by treatment notes because the claimant had stated her feet hurt when she was on them all day (Tr. 27). He further gave no weight to Dr. Ferguson's opinion because Dr. Dulowski had not found such limitations, and further, Dr. Ferguson was not a specialist and "only a family practice doctor" (Tr. 27).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373

F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight.  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so."  *Id.* at 1301 [quotations and citations omitted].  In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).  The undersigned Magistrate Judge finds that the ALJ's assessment, set forth above, falls short of this requirement.

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians.  *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).  *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not

-9-

"pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).  This is of particular concern where, as here, there is a good indication that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments and her worsening condition several years following her stroke.  20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

More importantly, although an ALJ is not required to give controlling weight to an opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations.  Here, the ALJ ignored the consistent evidence in the record related to the claimant's persistent hand and upper extremity pain, instead focusing on the one-time evaluation conducted by Dr. Dulowski. This ignores Dr. Ferguson's decade-long treatment relationship with the claimant and knowledge regarding her limitations that she possessed as part of that treatment relationship, particularly the repeated treatment notes regarding the claimant's documented hand stiffness and pain (including referral to a specialist for treatment).  *See Langley,* 373 F.3d at 1119.  *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc.

Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Instead, the ALJ ignored that evidence and instead focused on those notes where the claimant was doing well. The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984). This is particularly suspect where, as here, the ALJ's refusal to consider further limitations with regard to hand impairments, including sending out interrogatories to a new vocational expert, was the difference between the claimant being found disabled and not disabled.

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant could perform, if any, and ultimately whether she was disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the

case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**